IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN GORDON GRIMES, JR.,<br><br>Defendant. | CRIMINAL ACTION NO.<br><br>1:20-cr-427-SCJ-CMS |

## **REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Stephen Gordon Grimes, Jr.'s Motion to Suppress Cell Phone Evidence Obtained from Border Search, which challenges a search that occurred at an international point of entry, the Hartsfield-Jackson International Airport in Atlanta, Georgia. [Doc. 26]. In his motion, Grimes argues that the search was not supported by reasonable suspicion, while acknowledging that under binding Eleventh Circuit precedent, reasonable suspicion is not required at border searches. [*Id.* at 2, 5–6]. Thus, Grimes essentially concedes that his motion must be denied by this Court, but he points out that there is a circuit split on the issue of whether the Government must show reasonable suspicion to support a search at the border, and he requested an evidentiary hearing to preserve the issue in case the Supreme Court rejects the Eleventh Circuit's view on this question. [*Id.* at 2].

## I.    Facts

On June 2, 2021, I held an evidentiary hearing. [Doc. 32, Transcript ("Tr.")]. At the hearing, the Government called three Customs and Border Patrol ("CBP") officers: Darryl Vassar, Brian Patrick Coder, and Kevin Griffith. [*Id.* at 5, 25, 46].

The evidence showed that on September 29, 2020, Grimes re-entered the United States at the Hartsfield-Jackson Atlanta International Airport after getting off a Korean Air flight from Incheon, Korea. [Tr. at 9]. Grimes entered primary processing, during which CBP asks about the purpose of the passenger's travel, inspects the passenger's passport, and takes a photograph of the passenger to run through a facial recognition system to verify that the passenger in front of the officer matches the person depicted in the passport. [*Id*. at 7–9]. At primary processing, Grimes stated that he had been a ship's cook on "a Merchant Marine-type ship," presented his U.S. passport to Officer Vassar, and was photographed for the facial recognition system. [*Id.* at 6, 9–10]. Officer Vassar testified that Grimes answered the routine questions appropriately and did not act suspiciously. [*Id.* at 17–18].

Officer Vassar testified that the facial recognition system triggered a "lookout," which was an alert in the computer system. [Tr. at 10–11]. The "lookout" advised that Grimes was linked to child sexual exploitative material and instructed the officers to refer Grimes to secondary processing, which should include an

examination of his electronic devices. [*Id.* at 10–12, 20]. Officer Vassar contacted the command center, which sent someone to escort Grimes to the secondary inspection area. [*Id.* at 12–13].

Grimes was escorted to the secondary inspection area, which is designed for more thorough inspections of passengers and their belongings, where he encountered Officers Coder and Griffith, as well as another CBP officer named Valentine. [Tr. at 27–29]. After Grimes gave Officer Griffith a binding declaration that the bags present were his, the officers began searching his baggage. [*Id.* at 28–29, 48–50]. Officer Coder was asked to assist because he had experience on a CBP team that dealt with child pornography and sexually exploitative material on media devices. Officer Coder testified that he looked in Grimes's backpack, where he found a laptop, several cell phones, thumb drives, hard drives, a GoPro, and SIM cards. [*Id.* at 30, 34, 51]. Officer Coder examined one of the cell phones for approximately fifteen to twenty minutes, looking through Grimes's photographs and messages. [*Id.* at 31]. Within the "recently deleted" photos folder in Grimes's photo gallery, Officer Coder found images of young children "in what [he] would say would be a child erotica type of thing." [*Id.* at 31–32.].

Officer Coder testified that after he discovered the "child erotica," he stopped the inspection and contacted Homeland Security Investigation ("HSI") so HSI could

3

continue the investigation. [Tr. at 32, 53]. The CBP officers ceased going through Grimes's electronics, tidied his things, and detained him until HSI arrived. [*Id.* at 32–33, 54].

Officer Coder testified that the information creating the "lookout" was placed in the computer system by the National Targeting Center, which he described as "CBP or Homeland Security's national headquarters," whose role it is "to relay information [about targets] down to the fields." [Tr. at 44–45]. According to Officer Coder, those targets could stem from different types of investigations, such as narcotics, child exploitation, and terrorism. [*Id.* at 45]. Officer Coder testified that the specific "lookout" in this case showed that the National Targeting Center had developed an operation called Northern Stargazer, which targeted persons who might be in possession of child sexual exploitation materials, and that Grimes was a target of that operation. [*Id.* at 44–45]. Officer Coder, however, stated that he did not know how the database worked, why a particular person might be entered into the database, or whether the information in the database was accurate. [*Id.* at 37–38]. He testified that such information was "higher level" than he was.[1] [*Id.* at 38].

---

[1] After the motion was fully briefed, I held oral argument to offer the Government the opportunity to supplement the record to include additional information about how the "lookout" in this case was generated and/or how the system worked in general. The Government declined to supplement the record,

## II.     Discussion

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  The Fourth Amendment protects citizens from random government intrusion on their privacy.

One significant exception to the Fourth Amendment's restrictions occurs at the United States' borders.  Routine searches of travelers and their belongings at an international border "are not subject to any requirement of reasonable suspicion, probable cause, or warrant . . . ." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985); *see also United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); *United States v. Alfaro-Moncada*, 607 F.3d 720, 728 (11th Cir. 2010) (citation omitted) ("At the border, an individual has a lesser expectation of privacy, the government has a greater interest in searching,

---

stating that such information was not necessary to the reasonable suspicion determination.

and the balance between the interests of the government and the privacy right of the individual is struck more favorably to the government."). An airport where international flights land is considered the functional equivalent of a border. *United States v. Richards*, 638 F.2d 765, 771 (5th Cir. 1981) (citation omitted). *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (opinions of the Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit).

Customs agents have been given broad authority to search vehicles and persons, including their personal effects, upon their entry into the United States to prevent unlawful merchandise from being brought into the United States. *See* 19 U.S.C. §§ 482, 1581. This authority includes the examination of potentially obscene material. 19 U.S.C. § 1305. "Merchandise" is not to be delivered from the custody of the Customs Service until it has been inspected, appraised, or examined and has been found to be in compliance with the laws of the United States. 19 U.S.C. § 1499(a)(1).

The Eleventh Circuit has held that no suspicion is necessary to conduct a border search of an electronic device such as a cell phone. *See United States v. Touset*, 890 F.3d 1227, 1229 (11th Cir. 2018) (reaffirming the border search doctrine and making clear that electronic devices are included in what may be searched

without reasonable suspicion).  The Ninth Circuit has gone the other way, holding that Customs agents must have reasonable suspicion to perform a forensic analysis of a passenger's electronic devices.  *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013).

Recognizing that this case is pending in the Eleventh Circuit rather than the Ninth, Grimes concedes that binding precedent permits CBP officers like the ones in this case to conduct a search of a traveler's electronic devices without reasonable suspicion when a person is entering the United States, and Grimes acknowledges that his motion will be denied.  [Doc. 40 at 1].  In his post-hearing reply brief, Grimes acknowledges that "under current Eleventh Circuit law on border searches the motion to suppress must be denied."  [*Id.*].  I agree with this assessment, and will recommend that the motion to suppress be denied.  *See Touset*, 890 F.3d at 1229, 1232–33.

Although I held an evidentiary hearing on the issue of whether the CBP officers in this case had reasonable suspicion to conduct the search of Mr. Grimes, I will not make a recommendation in that regard because it is not necessary to the resolution of the pending motion.  If the law is changed in a way that makes this issue relevant, the case can be referred back to me for analysis of whether there was reasonable suspicion to support the search.

### III. Conclusion

For the reasons stated, I **RECOMMEND** that the Motion to Suppress Cell Phone Evidence Obtained from Border Search [Doc. 26] be **DENIED**.

I am aware of no further pretrial or discovery matters to be resolved in this case, and, therefore, I hereby **CERTIFY** this case as ready for trial.

This 28th day of September, 2021.

_____
CATHERINE M. SALINAS
United States Magistrate Judge